DOWNING et al. v. UNITED STATES.

(Circuit Court, S. D. New York. May 31, 1902.)

No. 3,074.

1. CUSTOMS DUTIES—IMPORTATIONS FROM CUBA.
    Importations from Cuba are not free of duty.
2. SAME—OLD CANNON.
    Old cannon, composed of copper 91.09 per cent. and tin 7.05 per cent. (the character of the remaining 1.86 per cent. not being determined), though practically worthless for use against modern implements of war, are nevertheless dutiable as manufactures of metal, within paragraph 193 of Act July 24, 1897, and are not free of duty as brass or Dutch metal, within paragraph 505, or as "old copper fit only for manufacture," or "clipping from new copper," or as "composition metal of which copper is a component material of chief value," within paragraph 533.

Appeal by R. F. Downing & Co. from a decision of the board of United States general appraisers, which affirmed the decision of the collector of customs at the port of New York.

The following is the opinion of the board of general appraisers:

The protests are against the assessment of duty on certain old cannon imported from Cuba. They were returned by the appraiser as "old brass cannon," and duty was assessed thereon at the rate of 45 per cent. ad valorem, under the provisions of paragraph 193 of section 1 of the act of July 24, 1897, which reads in part as follows:

"Articles or wares not specially provided for, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal, and whether partly or wholly manufactured."

They are claimed by the importers to be free of duty under paragraph 533 or paragraph 505 of section 2 of said act. It is also claimed that the articles are free of duty because coming from the island of Cuba. This last point was passed upon adversely to the claim of the importers in G. A. 4515 and 4594, and following those decisions we deem it unnecessary to consider it here. The two paragraphs invoked by the importers read as follows:

"533. Old copper, fit only for manufacture, clipping from new copper, and all composition metal of which copper is a component material of chief value, not specially provided for in this act."

"505. Brass, old brass, clippings from brass or Dutch metal, all the foregoing, fit only for remanufacture."

It appears from the testimony that the articles are composed of copper 91.09 per cent. and tin 7.05 per cent., the character of the remaining 1.86 per cent. not being determined. It is clear from this that they are not composed of brass or dutch metal, and are not included within the provisions of paragraph 505, nor are they composed of copper, so as to fall within the provisions of paragraph 533 for "old copper fit only for manufacture," or "clipping from new copper." In passing upon this case, therefore, the inquiry

need be directed only as to whether the articles in question are "manufactures of metal," and hence dutiable as assessed, or whether they are "composition metal of which copper is a component material of chief value," and so free of duty, as claimed by the importers. It is not disputed that the articles are cannon, and the testimony shows conclusively that they are so known. but it is contended on the part of the importers that, being unfit for use as cannon, they have lost their character as such, and are, therefore, to be classified as metal, and not as manufactures thereof. While it may be true that the cannon would not be used as ordnance at the present day, being obsolete and worthless as against modern implements of war, they are nevertheless cannon, and as such were and are manufactures of the metal of which they are composed. The fact that they are not made in the most approved style, or that possibly no one would use them as cannon at the present time, cannot take away from them the distinctive name, character, and use they acquired when they became manufactures, and remove them from the category of manufactured articles. This view is in conformity with the opinion expressed by Mr. Justice Lamar in the case of Dwight v. Merritt, 140 U. S. 213, 11 Sup. Ct. 768, 35 L. Ed. 450, where the supreme court passed upon certain completed railroad rails imported for the purpose of breaking up and remanufacture. They were not suitable for use in this country in the condition as imported, being of too high a pattern to be safe, too short, and too expensive, and they were eight years old and rusty. The court held that the articles were not included within the term "wrought scrap iron" as that term was defined in the tariff act, but were dutiable as "iron bars for railroads or inclined planes." The court said: "Moreover, looking at the clause of the statute under which the duty was assessed, and taking into consideration the actual condition of the rails when imported, we think the importer's invoice improperly described the rails as 'pieces iron rails, rusty'; and it would seem that the classification made by the collector was right. They were completed rails, and had never been in actual use, although they were several years old, and somewhat rusty. Their condition was that of 'iron bars for railroads or inclined planes.' True, they may have not been made after the most approved style of the article in use on American railroads, but that does not alter their condition at that time, which is the test as to their dutiable classification. As was said by Mr. Justice Blatchford, speaking for the court, in Worthington v. Robbins (decided at the present term) 139 U. S. 337, 11 Sup. Ct. 581, 35 L. Ed. 181: 'In order to produce uniformity in the imposition of duties, the dutiable classification of articles must be ascertained by an examination of the imported article itself, in the condition in which it is imported.' In this case the rails were described in the invoice as 'pieces iron rails, rusty,' by the appraiser as 'iron railway bars,' and in the original entry and on the withdrawal as 'pieces old iron rails.' From these descriptions, which were somewhat variant, and from the completed condition of the rails as railroad rails, there was certainly nothing in the premises to show that they might not have been put into actual use in this country without undergoing the process of manufacture." It further appears in this case that a number of the cannons have been sold for purposes other than remanufacture, so that as to these it certainly cannot be said that they are fit to be used only for purposes of remanufacture. It does not appear for what purpose the cannons sold here were purchased, and (to quote again from the opinion in the case above cited) "from the completed condition * * * there is certainly nothing in the premises to show that they might not have been put into actual use in this country without undergoing the process of manufacture." The testimony does not make it clear that the articles are composed of "composition metal, of which copper is a component material of chief value." We hold, however, that they are dutiable as manufactured articles or wares composed of metal, and not as metal, and they would, therefore, fall within the provisions of paragraph 193, irrespective of what their component metal or metals might be.

The protest is overruled in each case.

Walter H. Bunn, for importers.

D. Frank Lloyd, Asst. U. S. Atty.

LACOMBE, Circuit Judge (orally). These old cannon undoubtedly were manufactures of metal, and I concur in the opinion of the board of general appraisers that the mere circumstance that they have become obsolete, their structure remaining unchanged, will not take them out of the category of manufactured articles.

Decision affirmed.